IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LOKESH BABU VUYYURU,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Civil Action No. 3:15CV598–HEH
　　　　　　　　　　　　　　　　)
WELLS FARGO BANK, N.A., *et al.*,　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　)

## MEMORANDUM OPINION
(Motion to Dismiss)

THIS MATTER is before the Court on Defendants Wells Fargo Bank, National Association's ("Wells Fargo")[1] and Ocwen Loan Servicing, LLC's ("Ocwen") (collectively "Defendants") Motion to Dismiss (ECF No. 2), filed on October 27, 2015. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7, Defendants provided the required notice to *pro se* Plaintiff Lokesh Babu Vuyurru ("Plaintiff") that he had twenty-one days to respond and the Court could dismiss his suit should he not respond. Plaintiff failed to file any response. For the reasons set forth below, the Court will grant Defendants' motion.

## I. BACKGROUND

On a motion to dismiss, the Court takes the well-pleaded allegations as true and views them in light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P.*

---

[1] Wells Fargo notes that Plaintiff erroneously named Wells Fargo Bank, N.A. d/b/a Option One Mortgage as a Defendant in his Complaint. Wells Fargo proceeds "as Trustee for Option One Mortgage Loan Trust 2003-4, Asset-Backed Certificates, Series 2003-4" in this matter. (Defs.' Mem. Supp. Mot. Dismiss 1, ECF No. 3.)

*and Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Accordingly, the Court finds as follows:

The Home Affordable Modification Program ("HAMP") provides eligible homeowners with the opportunity to modify their mortgages to make them more affordable. (Compl. 3, ECF No. 1.)[2] To further the HAMP's goals, the Department of the Treasury entered into servicer participation agreements ("SPA") with mortgage servicers. (*Id.* at 3.) Defendants both entered into SPAs with the federal government that incorporated HAMP guidelines. (*Id.*)

HAMP guidelines set forth processes for determining whether a borrower qualifies for a loan modification. (*Id.* at 4–5.) If a borrower is eligible, that borrower proceeds under a Trial Period Plan ("TPP"). (*Id.* at 5.) During this period, if the borrower satisfies certain conditions precedent—including making three modified trial payments over the course of three months and remaining otherwise eligible under the HAMP criteria—the borrower is provided with a permanent loan modification. (*Id.*)

Since 2010, Plaintiff has filed for several mortgage loan modifications pursuant to the HAMP. (*Id.* at 22.) Plaintiff was asked for updates and resubmissions approximately every three months. (*Id.*) According to Plaintiff, he finally complied with all requirements in October 2014. (*Id.*) A letter was issued providing an income verification statement and sent under an alleged TPP. (*Id.*)

---

[2] Plaintiff's forty-page Complaint contains inconsistent paragraph numbering. For example, Plaintiff numbers paragraphs one through seventy, and then begins renumbering at sixteen. Pages later, after his (second) paragraph thirty-seven, Plaintiff begins numbering at sixty-eight. Accordingly, the Court cites to the pagination assigned by ECF for ease of reference and clarity.

Plaintiff sent his first payment as detailed in the letter; however, Plaintiff received a call informing him that his payment was ninety-two dollars short. (*Id.*) On December 19, 2014, Plaintiff sent that amount through Western Union as specified by Ocwen. (*Id.*) Ocwen reported that it had not received Plaintiff's ninety-two dollars. (*Id.* at 23.) Accordingly, Plaintiff sent another payment of ninety-two dollars. (*Id.*) Plaintiff asserts this second payment "is still sitting at Western Union." (*Id.*)

On February 18, 2015, Ocwen notified Plaintiff by letter that he was "out of modification" and Ocwen would be foreclosing on his house. (*Id.*) Plaintiff again applied for a modification pursuant to HAMP rules but was denied. (*Id.*) Plaintiff contemplated filing for bankruptcy and "demanded an investigation [in]to the actions of Ocwen employees and the systematic problem [of] not willing to help plaintiff." (*Id.*) In March 2015, the foreclosure proceedings stopped. (*Id.*)

Plaintiff again submitted documents pursuant to HAMP regulations. (*Id.*) Although Plaintiff states he had the required documentation, Plaintiff's loan was not put back under HAMP regulations. (*Id.*) Plaintiff allegedly spoke to an Ocwen employee, Mr. Mayur, on September 3, 2015, who informed Plaintiff the foreclosure would be stopped. (*Id.*) Plaintiff stated that he would file for bankruptcy if the foreclosure went forward. (*Id.*)

On September 9 and 10, 2015, Plaintiff was again notified of the intention to move forward with the foreclosure. (*Id.*) Plaintiff was informed that the foreclosure was not going to be stopped because he had been denied modifications twice. (*Id.*) Plaintiff states that he was out of the country and unable to file for bankruptcy to protect his house

3

from foreclosure. (*Id.*) Upon his return, the foreclosure had already happened, and Plaintiff claims that he lost an iPad and cash. (*Id.* at 24.)

Plaintiff now brings seven counts against Defendants. Plaintiff brings common law breach of contract and fraud claims. He asserts Defendants violated the Virginia Consumer Protection Act ("VCPA"), Virginia Code § 6.2-1629 ("Section 1629"),[3] the Fair Debt Collection Practices Act ("FDCPA"), and the Real Estate Settlement Procedures Act ("RESPA"). Plaintiff also seeks declaratory and injunctive relief. Defendants have moved to dismiss each of Plaintiffs claims. (Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") 1, ECF No. 3.)

## II. STANDARD OF REVIEW

The well-pleaded facts contained within the Complaint both inform and constrain this Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). The task at hand is to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, plaintiff's well-pleaded allegations are taken as true and the complaint must be viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc.*, 385 F.3d at 841. The Court, however, "need not accept the legal conclusions drawn from the facts," nor must the Court "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591

---

[3] Plaintiff cites to Virginia Code § 6.2-1629 as the "Virginia Mortgage Fraud Protection Act"; however, nowhere in that chapter does the Virginia Code indicate that it is the "Virginia Mortgage Fraud Protection Act" as cited by Plaintiff. Accordingly, the Court will employ the cited code section instead of the "Virginia Mortgage Fraud Protection Act."

4

F.3d 250, 253 (4th Cir. 2009) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

To survive Rule 12(b)(6) scrutiny, a plaintiff must provide more than merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

The Court addresses each of Plaintiff's claims in turn. As an initial matter, however, the Court notes that throughout the Complaint, Plaintiff references "class members." Other than sparsely mentioning these purported "class members," Plaintiff's Complaint lacks any factual underpinning supporting the conclusion that Plaintiff properly brings suit on a class basis in accordance with Federal Rule of Civil Procedure 23. Accordingly, the Court treats and addresses Plaintiff's claims as individual ones.[4]

---

[4] This is but one example of Plaintiff's confusing and inconsistent pleading. He also claims that Defendants breached a permanent loan modification, but throughout he pleads that Defendants had wrongfully *denied* him such a modification. He states that when he returned from out of the country, the foreclosure had already occurred, but he seeks injunctive relief to prevent the foreclosure. Aside from inconsistent pleading, Plaintiff references attachments A, C, E, F, G, H, and I, yet only provides Attachments A and B. Further, Plaintiff cites to Attachment A as the SPA entered into by Wells Fargo with the Department of the Treasury, yet the provided

5

### A. Common Law Claims

#### i. Breach of Contract

Plaintiff's breach of contract claim contains two components. First, he argues that Wells Fargo has "systematically failed to meet its obligations under the [SPA] . . . [and] has failed to comply with the HAMP Guidelines." (Compl. 20.) Second, Plaintiff argues that Defendants breached their contract with Plaintiff by failing to honor a permanent loan modification. (*Id.* at 38–39.)

Defendants contend Plaintiff is not a party to any SPA, and, therefore, cannot use any SPA as the basis for a breach of contract claim against Defendants. (Defs.' Mem. 9.) Defendants also aver Plaintiff cannot establish he was owed any legally enforceable right with regard to any TPP agreement. (*Id.*)

Courts have generally rejected attempts by homeowners to pursue breach of contract claims as third-party beneficiaries of SPAs because those homeowners were merely incidental beneficiaries with no cognizable property interest in loan modifications. *Bourdelais v. J.P. Morgan Chase*, 2011 WL 1306311, at *3–4 (E.D. Va. Apr. 1, 2011) (collecting cases). Further, although loan servicers must comply with HAMP guidelines to receive servicer benefits, courts have also held that violation of HAMP regulations does not create a private right of action for borrowers. *See id.* (collecting cases).

---

Attachment A is a certificate for Plaintiff's credit counseling. Plaintiff does not cite to Attachment B, but provided a notice of foreclosure sale from BWW Law Group—a non-party to this suit—as Attachment B.

6

Here, Plaintiff merely concludes that Defendants have violated the SPAs and HAMP guidelines, but he offers no facts on how these alleged violations specifically impacted his circumstances or how he was an intended third-party beneficiary. Plaintiff's allegations that Defendants breached the SPAs and HAMP regulations amount simply to conclusions. Absent more than these conclusory statements, the Court will not depart from the generally accepted rule that he cannot sue for breach of the SPAs or violations of HAMP guidelines. Accordingly, Plaintiff's breach of contract claim under this theory must be dismissed.

Although Plaintiff submits that he had a permanent modification agreement with Defendants, he alleges no facts supporting this contention.[5] He claims to have executed a permanent loan modification, but he offers no facts regarding the terms and conditions of the permanent loan modification or how Defendants breached the agreement. Plaintiff merely states in conclusory fashion that Defendants failed to honor the permanent loan modification agreement. Plaintiff's second theory amounts to nothing more than an unsupported conclusion that fails to survive Rule 12(b)(6) scrutiny. *See Twombly*, 550 U.S. at 555. Because no private right of action exists and because Plaintiff fails to plead sufficient facts regarding any permanent loan modification, his breach of contract claim must be dismissed.

---

[5] To the extent Plaintiff believes that he completed his TPP successfully and was entitled to a permanent modification, Plaintiff's pleaded facts belie this notion. Plaintiff pleads that under any TPP, borrowers must successfully make three trial payments to become eligible for a permanent modification. (Compl. 5.) Plaintiff later states that he only attempted to make one payment under his TPP and experienced difficulty with Ocwen because that payment was ninety-two dollars short. (*Id.* at 22–23.)

7

### ii. Fraud

Plaintiff next brings a claim for common law fraud related to payments made under an alleged permanent loan modification. (Compl. 37.) Defendants argue Plaintiff's fraud claim lacks the specificity and particularity required under the Federal Rules and must be dismissed. (Defs.' Mem. 15–16.)

To succeed on a claim of fraud, a plaintiff must prove "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Winn v. Aleda Constr. Co., Inc.*, 227 Va. 304, 308 (1984). At the pleading stage, Federal Rule of Civil Procedure 9 mandates that a plaintiff also "state with particularity the circumstances constituting fraud." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting Fed. R. Civ. P. 9(b)). This includes "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)) (internal quotation marks omitted).

Here, the essence of Plaintiff's fraud claims rests upon the allegation that Defendants misrepresented to Plaintiff that he was in default on his mortgage and that his loan modification had been denied. (Compl. 37.) As with his breach of contract claim, his fraud pleadings are general and conclusory. Plaintiff's vague pleadings fail to meet the requirement of particularity because he fails to specify the time, place, or contents of any false representation. Accordingly, Plaintiff fails to meet Rule 9's pleading requirement, and his fraud claim will be dismissed.

### B. Statutory Claims

#### i. Virginia Consumers Protection Act

In Count II, Plaintiff alleges violations of the VCPA. (*Id.* at 30–32.) Defendants move to dismiss this count contending that Plaintiff only offers generalities related to any statutory fraud claim. (Defs.' Mem. 24.)

To state a claim under the VCPA, a plaintiff must show (1) a fraudulent act, (2) committed by a supplier, (3) in connection with a consumer transaction. Va. Code § 59.1-200. Because the VCPA prohibits fraud in consumer transactions, VCPA claims must meet the heightened pleading standard of Federal Rule of Civil Procedure 9. *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 214, 220 (4th Cir. 2015) (unpublished); *Nahigian v. Juno Loudon, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) (stating that "[a]s a claim sounding in fraud, Rule 9(b)'s particularity requirements apply" to VCPA claim).

As noted above, Plaintiff vaguely pleaded common law fraud and could not meet Rule 9's particularity requirements because he did not indicate the time, place, and contents of the fraudulent representations. The application of Rule 9 to Plaintiff's common law fraud claim applies equally to his statutory fraud claim. Accordingly, his VCPA claim must be dismissed.

#### ii. Section 1629

Plaintiff also brings suit for violations of Virginia Code § 6.2-1629. Section 1629 prohibits mortgage originators from using any deception, fraud, false pretenses, false promises, or misrepresentations in connection with a mortgage loan transaction. Va.

9

Code § 6.2-1629(A). Enforcement of this statute lies with the Commonwealth's Attorney General. *See id.* § 6.2-1629(B). As Defendants note, by its express terms, Section 1629 does not create a private right of action for violations. *Id.* § 6.2-1629(G); (Defs.' Mem. 25). Plaintiff's claims pursuant to Section 1629, therefore, will be dismissed.

### iii. Fair Debt Collections Practices Act

Plaintiff contends that Ocwen violated the FDCPA by using unfair or unconscionable means to collect a debt, by sending false and misleading communications regarding Plaintiff's mortgage, by threatening to foreclose on Plaintiff's home when Ocwen had no present right to possession, and by misstating the amount of debt contained within correspondence. (Compl. 32–33.) Defendants respond that Plaintiff fails to advance any specific allegations supporting his claim because he fails to indicate when the alleged violations occurred and how the violations occurred. (Defs.' Mem. 21.)

Generally, the FDCPA prohibits debt collectors from employing abusive means in collecting a debt from consumers. To state a claim under the FDCPA, a plaintiff must show that (1) a defendant is a debt collector under the statute, (2) plaintiff was the object of collection activity arising from consumer debt, and (3) a defendant engaged in an act or omission prohibited by the statute. *Dikun v. Streich*, 369 F. Supp. 2d 781, 785 (E.D. Va. 2005).

Although Plaintiff suggests Defendants engaged in several prohibited activities under the FDCPA, he offers no facts supporting his conclusions. Plaintiff fails to indicate what specific unfair or unconscionable means Defendants utilized in attempting to collect a debt, fails to indicate what specific communications were false regarding Plaintiff's

10

mortgage, and fails to indicate what specific communication misstated Plaintiff's debt.[6] Although Plaintiff claims Defendants threatened foreclosure where they had no right to possession of the property, Plaintiff apparently bases this theory on the premise that he either had or should have been granted a permanent loan modification. As detailed above, both of those theories fail to pass Rule 12(b)(6) muster. Thus, Plaintiff fails to articulate facts supporting the conclusion that Defendants had no right to possession of the property. Plaintiff's FDCPA claim amounts to mere labels, conclusions, and a formulaic recitation of the elements of the cause of action. *See Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss his FDCPA claim.

### iv. Real Estate Settlement Procedures Act

Plaintiff asserts that Defendants violated the RESPA by failing to make appropriate changes on Plaintiff's mortgage account after receiving a qualified written request. (Compl. 35.) Defendants contend Plaintiff fails to state a claim because he fails to allege that he made any qualified written request. (Defs.' Mem. 20.) Further, Plaintiff failed to allege why the demanded corrections were appropriate ones. (*Id.*)

The RESPA requires a loan servicer, upon receipt of any qualified written request, to make appropriate corrections to the account of the borrower. 12 U.S.C. § 2605(e)(2). A qualified written request "shall be a written correspondence . . . that . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the

---

[6] To the extent Plaintiff claims Attachment B—a debt collection letter from a non-party—constitutes the communication that misstates the debt, Plaintiff fails to indicate why the letter should be attributed to Defendants.

11

account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1).

On page thirty-five of his forty-page Complaint, Plaintiff for the first time mentions any communication to Ocwen purporting to be a qualified written request. (Compl. 35.) He simply states that he made one and followed all appropriate procedures under the RESPA in making the request. (*Id.* at 35–36.)

Conspicuously absent from Plaintiff's bald assertions are facts. He neither offers specific information related to the letter's request, nor attaches to his Complaint any communication claiming to be that qualified written request. Plaintiff fails to plead facts showing why he believed his account contained any error or why his requested corrections were appropriate ones. His pleadings related to the RESPA claim amount to a threadbare recital of the cause of action. *See Twombly*, 550 U.S. at 555. Plaintiff's RESPA claim, therefore, must be dismissed.

### C. Declaratory and Injunctive Relief

Plaintiff also seeks declaratory and injunctive relief. He asks this Court to "enter an Order enforcing the loan modification agreement entered into by Plaintiff and Wells Fargo (Option One) Mortgage on or about December 20, 2013; [d]eclare the loan modification agreement to be valid and enforceable; [o]rder Ocwen to honor the terms of the permanent loan modification agreement and order appropriate declaratory relief." (Compl. 30.) Defendants assert that declaratory relief is inappropriate because he seeks declaratory relief for past conduct. (Defs.' Mem. 29.)

12

The Federal Declaratory Judgment Act allows district courts to "declare the rights and legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). Declaratory judgment "is appropriate when the judgment will serve a useful purpose in clarifying and settling legal relations in issue, and . . . when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (alteration in original) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 231, 325 (4th Cir. 1937)) (internal quotation marks omitted). A court's power to enter declaratory relief "has consistently been considered discretionary." *Id.* (citations omitted)

Aside from a single reference, the Complaint lacks any facts regarding this alleged December 20, 2013 modification. Plaintiff merely offers the bald conclusion that this modification exists and asks this Court to declare the rights contained therein. The Court cannot say declaring any rights stemming from this alleged December 20, 2013 modification would serve a useful purpose. Absent any facts, the Court will decline to exercise its discretion to hear Plaintiff's declaratory judgment claim, and this claim will be dismissed.[7]

Finally, Plaintiff seeks preliminary injunctive relief to prevent a foreclosure until a decision on the merits has been made. (Compl. 29.) Defendants respond that any injunctive relief is inappropriate because Plaintiff cannot show likely success on the merits of any of his claims. (*Id.* at 26.)

---

[7] Further, Plaintiff makes inconsistent pleadings regarding any December 2013 modification. Although he asks this Court to declare the loan modification agreement to be enforceable, he earlier pleads that he finally complied with all requirements to obtain a loan modification nearly a year later in October 2014.

To obtain a preliminary injunction, a party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Defense Counsel, Inc.*, 555 U.S. 7, 20 (2008). Issuance of a preliminary injunction is an extraordinary remedy. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 189 (4th Cir. 2013) (en banc).

As discussed above, each of Plaintiff's claims fails at this stage. Accordingly, Plaintiff cannot show that he is likely to succeed on the merits. The Court will deny Plaintiff's request for the extraordinary remedy of a preliminary injunction.[8]

## IV. CONCLUSION

In sum, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted for his claims of breach of contract and violations of the FDCPA and the RESPA. Plaintiff fails to meet Federal Rule of Civil Procedure 9's pleading requirements for his claims of common law fraud and violation of the VCPA. Those claims will be dismissed without prejudice, and Plaintiff will be free to amplify the factual and legal basis on which his claims rest and refile his claims.

Similarly, at this stage, the Court also declines to exercise its discretion and entertain Plaintiff's declaratory judgment request because he fails to plead any facts related to the December 2013 modification agreement. The Court will also deny Plaintiff's request for injunctive relief because Plaintiff has failed to show a likelihood of

---

[8] Similar to the facts surrounding the alleged December 2013 modification, Plaintiff makes contradictory pleadings regarding the foreclosure. While he asks for preliminary injunctive relief to prevent any foreclosure, he previously pleads that the foreclosure occurred and he lost cash and an iPad in the process.

success on the merits. These determinations will be without prejudice, and Plaintiff will be free to amplify the factual and legal basis on which his claims rest and refile his claims.

Plaintiff cannot pursue his claim for violation of Section 1629 because that statute does not create a private right of action. Because the statute expressly creates no private right of action, Plaintiff's claim will be dismissed with prejudice.

Defendants' Motion to Dismiss (ECF No. 2) will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Jan. 28, 2016
Richmond, Virginia

15