IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LOKESH BABU VUYYURU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:15CV598–HEH |
| ) | |
| WELLS FARGO BANK, NATIONAL ) | |
| ASSOCIATION, AS TRUSTEE FOR ) | |
| OPTION ONE, MORTGAGE LOAN ) | |
| TRUST 2003-4, ASSET-BACKED ) | |
| CERTIFICATES, SERIES 2003-4, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Motion to Dismiss)

THIS MATTER is before the Court on Defendants Wells Fargo Bank, National Association's ("Wells Fargo") and Ocwen Loan Servicing, LLC's ("Ocwen") (collectively "Defendants") Motion to Dismiss (ECF No. 11), filed on June 14, 2016. Defendants seek to dismiss the Amended Complaint, which represents *pro se* Plaintiff Lokesh Babu Vuyurru's ("Plaintiff") second attempt to bring suit against Defendants for common law and statutory violations related to the foreclosure on Plaintiff's home. The Court previously dismissed many of Plaintiff's claims without prejudice, allowing him to augment their factual underpinnings.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7, Defendants provided the required notice to Plaintiff that he had twenty-one days to respond and the Court could dismiss his suit should he fail to do so. Plaintiff twice

moved for an extension of time to file his response to the Motion to Dismiss. The Court granted each request, ultimately allowing Plaintiff until July 19, 2016, to file his response. Despite those extensions, Plaintiff failed to file any response.[1] For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

## I. BACKGROUND

On a motion to dismiss, the Court takes the well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Accordingly, the Court finds as follows:

The Home Affordable Modification Program ("HAMP") provides eligible homeowners with the opportunity to modify their mortgages to make them more affordable. (Am. Compl. 3, ECF No. 10.)[2] To further the HAMP's goals, the Department of the Treasury entered into servicer participation agreements ("SPA") with mortgage servicers. (*Id.*) Defendants both entered into SPAs with the federal government that incorporated HAMP guidelines. (*Id.* at 3–4.)

HAMP guidelines set forth processes for determining whether a borrower qualifies for a loan modification. (*Id.* at 4–5.) If a borrower is eligible, that borrower proceeds under a Trial Period Plan ("TPP"). (*Id.* at 5.) During this period, if the borrower satisfies certain conditions precedent—including making three modified trial payments over the

---

[1] Plaintiff failed to file any response in opposition to Defendants' original Motion to Dismiss as well.
[2] Plaintiff's Amended Complaint contains inconsistent paragraph numbering. Accordingly, the Court cites to the pagination assigned by ECF for ease of reference and clarity.

course of three months and remaining otherwise eligible under the HAMP criteria—the borrower is provided with a permanent loan modification. (*Id.*)

In June 2003, Plaintiff refinanced his mortgage. (*Id.* at 22.) In 2009, Plaintiff listed the residence for sale, and he received an offer on the home. (*Id.* at 23.) The sale fell through, however, because his loan servicer at the time, American Home Mortgage Service ("AHMSI"), did not respond to Plaintiff's request for approval of the sale. (*Id.*) Eventually, Plaintiff was unable to make his required payments, and a corrected deed of foreclosure was recorded in January 2011. (*Id.* at 22.)

According to Plaintiff, he attempted to modify his loan with AHMSI, but AHMSI either misplaced or could not locate Plaintiff's documents. (*Id.* at 23.) Ocwen eventually became the servicer of Plaintiff's loan. (*Id.*) Plaintiff alleges that he also requested a loan modification from Ocwen. (*Id.*) He submitted loan modification documents, and Ocwen informed Plaintiff "that the request of approval of the Loan Modifications had been completed." (*Id.* at 24.)

Plaintiff claims that he and Mr. Savich[3] were in constant contact with AHMSI and Ocwen from March 2011 until September 2015 about a loan modification. (*Id.*) Neither Plaintiff nor Mr. Savich had been informed that AHMSI or Ocwen was "missing any documents or was in need of any further information to evaluate" Plaintiff's request for a mortgage modification. (*Id.*)

---

[3] Mr. Savich is apparently an attorney who was involved with Plaintiff during the attempted loan modification process. (Mot. Correction Defs.' Name and Extension 2, ECF No. 15.)

3

Plaintiff allegedly began a TPP in October 2014. (*Id.* at 25.) According to Plainitff, he sent his first payment to Ocwen as directed, but he received a call stating his payment was $92 short. (*Id.*) Plaintiff then sent $92, and that money "is still sitting at Western Union." (*Id.*) In February 2015, Ocwen informed Plaintiff that he was out of the modification and that Ocwen would be foreclosing. (*Id.*) Plaintiff again applied for a modification under the HAMP, which was denied. (*Id.*)

Plaintiff states that he then attempted to file for bankruptcy protection to prevent foreclosure proceedings on his house. (*Id.*) Mr. Mayur, a manager at Ocwen, allegedly told Plaintiff that there was no need to file for bankruptcy, and the scheduled foreclosure sale would be cancelled. (*Id.* at 25–26.) Six days later, however, Plaintiff was informed that the foreclosure would not be called off because he had once again been denied a modification pursuant to the HAMP. (*Id.* at 26.) Although Plaintiff requested alternative means of avoiding the foreclosure, Ocwen offered none. (*Id.*) According to Plaintiff, he was out of the country and unable to file his bankruptcy paperwork to prevent foreclosure. (*Id.*)

Plaintiff returned to the United States after the foreclosure. (*Id.*) According to Plaintiff, Ocwen had changed the locks, destroyed the alarm system, electric circuits, kitchen and refrigerator power supplies, and generally made a mess of the house. (*Id.*) Plaintiff contends that cash and an iPad were stolen from the house. (*Id.*) Plaintiff also maintains that he "or his children continue to reside in the [h]ouse." (*Id.* at 24.)

## II. STANDARD OF REVIEW

The well-pleaded facts contained within the Complaint both inform and constrain this Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). The task at hand is to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, plaintiff's well-pleaded allegations are taken as true and the complaint must be viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc.*, 385 F.3d at 841. The Court, however, "need not accept the legal conclusions drawn from the facts," nor must the Court "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

To survive Rule 12(b)(6) scrutiny, a plaintiff must provide more than merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

As an initial matter, Defendants argue this Court has entered a prefiling injunction against Plaintiff, warranting dismissal of the instant action. In *Vuyyuru v. Jadhav*, 3:10cv173, this Court entered an Order preventing Plaintiff from maintaining any action "claiming an injury resulting from the Virginia Board of Medicine's May 19, 2006, order revoking his license." (Order 2, ECF No. 107.) The Order required Plaintiff "to request the Court's permission before filing any new federal action." (*Id.*) Further, Plaintiff was to provide a petition for leave to file the action, a copy of that Order, a proposed document for filing the action, and an affidavit signed by Plaintiff certifying the claims forming the basis of the lawsuit were unrelated to an injury resulting from the May 2006 order revoking his medical license. (*Id.*) The Court warned Plaintiff that failure to follow these steps could result in the Court summarily dismissing Plaintiff's action. (*Id.*)

Admittedly, Plaintiff failed to follow the procedure set forth in the Court's prefiling injunction. The Court, therefore, could dismiss this action on that basis alone. The subject matter of the Amended Complaint, however, falls outside of the scope of the prefiling injunction. Specifically, Plaintiff does not seek damages resulting from the May 2006 order revoking his medical license. Given the posture of the case and the interests of judicial economy, the Court declines to dismiss the Amended Complaint on that ground alone. This decision neither affects the validity of the prefiling injunction nor signals to Plaintiff that he can disregard its requirements. The prefiling injunction remains in effect, and the Court admonishes Plaintiff that he must follow the procedures set forth therein for maintenance of any federal action in the future.

Turning next to the merits of the Amended Complaint, Plaintiff seeks redress for each of the Counts that this Court previously dismissed without prejudice. Distilled to its essence, Defendants move to dismiss the Amended Complaint because Plaintiff has failed to rectify the original Complaint's deficiencies as discussed in this Court's Memorandum Opinion dated January 28, 2016. For the reasons set forth below, the Court agrees with Defendants and Plaintiff's claims must be dismissed.[4]

Plaintiff seeks damages for breach of contract, alleging that Defendants breached a permanent loan modification agreement with Plaintiff. (Am. Compl. 39–40.) The Court previously dismissed this claim finding that Plaintiff's theory of recovery amounted to an unsupported legal conclusion. *Vuyyuru v. Wells Fargo Bank, N.A.*, 2016 WL 356087, at *3 (E.D. Va. Jan. 28, 2016). The Amended Complaint's bald assertion of the existence of a permanent loan modification remains unsupported by any factual pleadings.[5] Likewise, any theory of recovery as a third-party beneficiary for breach of an SPA or HAMP guidelines lacks any basis in the facts pled. *See id.* ("[T]he Court will not depart from the generally accepted rule that he cannot sue for breach of the SPAs or violations of HAMP guidelines."). Accordingly, Plaintiff's breach of contract claims will be dismissed.

---

[4] The Court notes that throughout the Amended Complaint, Plaintiff references "class members." Other than sparsely mentioning these purported "class members," the Amended Complaint lacks any factual underpinning supporting the conclusion that Plaintiff properly brings suit on a class basis in accordance with Federal Rule of Civil Procedure 23. Accordingly, the Court treats and addresses Plaintiff's claims as individual ones.

[5] To the extent Plaintiff believes he completed any TPP successfully and he was entitled to a permanent modification, the pleaded facts belie this notion because Plaintiff pleads that he only attempted to make one payment which was $92 short. (Am. Compl. 25.)

7

Plaintiff brings a claim of fraud against Defendants for falsely representing to Plaintiff that he was in arrears on his mortgage and that his loan modification had been denied. (*Id.* at 38.) The Court dismissed Plaintiff's fraud claims in his original complaint because he failed to meet Rule 9's requirement that litigants plead fraud with particularity. *Vuyyuru*, 2016 WL 356087, at *4. The fraud claim failed because it did not specify the time, place, or content of any false representation. *Id.*

Although Plaintiff arguably pleads factual content as to the time, place, and content of alleged conversations with Mr. Mayur, he fails to show how these statements were false or made with the intent to mislead. *See Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984). His general claims that he was entitled to a loan modification and wrongfully denied once again fail to raise his right to relief above the speculative level to one that is plausible on its face. *See Twombly*, 550 U.S. at 555, 570. The Court will therefore dismiss Plaintiff's fraud claim.

Plaintiff next brings a claim pursuant to the Virginia Consumer Protection Act ("VCPA"), arguing Defendants engaged in unfair or deceptive trade practices. (Am. Compl. 33–34.) The Court previously dismissed this claim for failure to meet Rule 9's particularity requirement. *See Vuyyuru*, 2016 WL 356087, at *4. Although Plaintiff did bolster his claims with some factual additions, he has failed to add any facts from which the Court may draw the reasonable inference that Defendants engaged in any unfair or deceptive trade practice in violation of the VCPA. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss Plaintiff's VCPA claim.

Plaintiff avers Defendants violated the Fair Debt Collections Practices Act ("FDCPA") by utilizing unfair or unconscionable means to collect a debt, misstating the amount of debt owed, and threatening to foreclose on Plaintiff's home when Defendants had no present right to possession. (Am. Compl. 35–36.) The Court previously dismissed the FDCPA claim because Plaintiff offered no factual basis for his conclusory allegations that Defendants engaged in these prohibited activities. *Vuyyuru*, 2016 WL 356087, at *5. He also failed to articulate facts supporting the conclusion that Defendants had no right to possess the property at issue. *Id.* The FDCPA claim in the Amended Complaint suffers from the same deficiencies as the original Complaint. Plaintiff has failed to provide sufficient factual basis raising his right to belief above the speculative level. *See Twombly*, 550 U.S. at 555, 570. His FDCPA claim will be dismissed.

The Amended Complaint contends Defendants violated the Real Estate Settlement Procedures Act ("RESPA") by failing to make appropriate corrections to Plaintiff's account after Plaintiff submitted a qualified written request ("QWR"). (Am. Compl. 36–37.) The Court previously dismissed the RESPA claim because Plaintiff offered no factual basis to conclude that Plaintiff ever sent Defendants a proper QWR. *Vuyyuru*, 2016 WL 356087, at *4–5. Again, Plaintiff states that he sent Defendants a QWR, but he presents no factual content to enable the Court to conclude that any communication to

Defendants constituted a QWR as defined by statute.[6] His RESPA claim will be dismissed.

Finally, Defendant seeks declaratory and injunctive relief. He asks this Court for a declaration with respect to the parties' rights under a mortgage modification agreement entered into in October 2014. (Am. Compl. 32.) The Court previously declined to exercise its discretion on a similar declaratory judgment request because Plaintiff had failed to plead any facts regarding the existence of a December 20, 2013 modification agreement. *Vuyyuru*, 2016 WL 356087, at *6. Similar to the original Complaint, other than a passing reference to the alleged October 2014 modification, Plaintiff pleads no facts regarding its contents or the responsibilities and rights of the parties contained therein. The present record is insufficient to enable declaratory relief, and the Court declines to exercise its discretion to do so. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1995).

Plaintiff also seeks an injunction preventing foreclosure on his home until this case has been decided on the merits. (Am. Compl. 32.) The Court previously denied Plaintiff's request for injunctive relief because Plaintiff failed to show that he was likely to succeed on the merits. *Vuyyuru*, 2016 WL 356087, at *6–7. Plaintiff once again has failed to show that he will succeed on the merits of the claims contained in his Amended Complaint. His injunctive relief request will be denied.

---

[6] Statute defines a QWR as a written correspondence containing a statement of reasons that the borrower believes an account is in error. 12 U.S.C. § 2605(e)(1).

## IV. CONCLUSION

In sum, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted for his contract, fraud, VCPA, FDCPA, and RESPA claims. The Court will decline to exercise its discretion and entertain Plaintiff's declaratory judgment request and will also deny Plaintiff's request for injunctive relief.

The determination of whether to dismiss with prejudice is within the Court's discretion. *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985). Courts have exercised their discretion to dismiss with prejudice where "amendment is futile." *Morefield v. Bailey*, 959 F. Supp. 2d. 887, 907 (E.D. Va. 2013). In the Eastern District of Virginia, amendments may be considered futile where "[p]laintiffs have previously had two full opportunities to plead their claim." *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D.Va. 2006).

This is such a case. Defendant has had two full opportunities to plead his claim: first, in his original Complaint, and then in his Amended Complaint. When given the opportunity to bolster the factual basis for his original Complaint, Plaintiff filed a nearly-identical Amended Complaint that offered little in terms of new and relevant factual material. The Court, therefore, makes its determinations with prejudice.

Defendants' Motion to Dismiss (ECF No. 11) will be granted.

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/
                                         Henry E. Hudson
                                         United States District Judge

Date: July 28, 2016
Richmond, Virginia

11